OPINION
{¶ 1} In this original action, relator, Jerry A. Wilson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his August 13, 2007 motion for temporary total disability ("TTD") compensation beginning July 1, 2007, on grounds that he voluntarily abandoned his employment with respondent Ellis Brothers, Inc. ("Ellis Brothers"), and to enter an order granting said compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Loc. R. 12(M) of the Tenth District Court of Appeals and Civ. R. 53. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. Therein, the magistrate concluded that the commission did not conduct a Louisiana-Pacific three-prong analysis, the failure of which resulted in two flawed findings: (1) relator was required to (but did not) show a reentry into the workforce in order to establish TTD eligibility; and (2) relator voluntarily abandoned his employment on the date he was fired and, thus, was ineligible to receive TTD. The magistrate, therefore, recommended that this court grant a writ of mandamus and remand the matter to the commission with instructions to vacate its order and reconsider the matter.
 {¶ 3} The commission and Ellis Brothers have filed objections to the magistrate's decision, the gravamen of which is that State ex rel.Pierron v. Indus. Comm., 120 Ohio St.3d 40, 2008-Ohio-5245, and notState ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,72 Ohio St.3d 401, 1995-Ohio-153, controls. For the reasons articulated in the magistrate's decision, the objections are overruled.
 {¶ 4} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant a writ of mandamus and remand this matter back to the commission for proceedings consistent with the above findings and the magistrate's decision.
Objections overruled; writ granted.
 BROWN and TYACK, JJ., concur. *Page 3 APPENDIX MAGISTRATE`S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Jerry A. Wilson, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his August 13, 2007 motion for temporary total disability ("TTD") compensation beginning July 1, 2007 on grounds that he voluntarily abandoned his employment with *Page 4 
respondent Ellis Brothers, Inc. ("Ellis Brothers"), and to enter an order granting said compensation. Findings of Fact:
 {¶ 6} 1. On December 12, 2005, relator sustained an industrial injury while employed as a cement truck driver for Ellis Brothers, a state-fund employer. On that date, relator injured his back when he slipped and fell in the parking lot. The industrial claim (No. 05-418867) was initially allowed for "contusion of back; sprain lumbar region."
 {¶ 7} 2. On December 19, 2005, seven days after the injury, relator's treating physician released him to return to work without restrictions.
 {¶ 8} 3. Relator continued to work his regular duty job with Ellis Brothers until September 22, 2006, when Ellis Brothers terminated his employment.
 {¶ 9} 4. According to an Ellis Brothers "Employee Disciplinary Report" dated September 22, 2006, relator was terminated on that date because he allegedly left on a water tank valve on his cement truck resulting in a ruined load of concrete.
 {¶ 10} 5. On November 15, 2006, relator filed a C-84 request for TTD compensation beginning September 22, 2006, the date of his termination from employment.
 {¶ 11} 6. On November 20, 2006, relator moved for an additional claim allowance. On December 29, 2006, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order additionally allowing the claim for "lumbar disc displacement at L4-5, L5-S1." Apparently, the bureau's order was not administratively appealed.
 {¶ 12} 7. Following an April 12, 2007 hearing, a district hearing officer ("DHO") issued an order denying TTD compensation beginning September 22, 2006. The DHO's order explains: *Page 5 
 It is the finding of the District Hearing Officer that the injured worker was released to full duty on 12/19/2005. The injured worker continued to work up until he was fired on 09/22/2006. The injured worker is now requesting temporary total disability compensation beginning 09/22/2006. However, the District Hearing Officer denies this request as the purpose for temporary total disability compensation is to compensate the injured worker for lost wages incurred due to his inability to work because of the injury. In this case, however, the injured worker's lost wages are due to him [sic] being fired.
 The District Hearing Officer also notes that there is no evidence that the injured worker returned to any other type of employment. Additionally, the District Hearing Officer finds that Dr. Luvara [sic] has failed to explain why the injured worker was disabled as of 09/22/2006 when prior to that date he was able to work full duty.
 Lastly, the District Hearing Officer notes that the injured worker was seen by Dr. Luvara [sic] on 09/08/2006 who recommended continuing treatment at two times a week, as he had done previously. The injured worker them [sic] did not see Dr. Luvara [sic] again until 11/01/2006, thus it is unclear how Dr. Luvara [sic] can opine that the injured worker was disabled as of 09/22/2006, when he did not even see him that day.
 Accordingly, based on the foregoing, the District Hearing Officer denies the request for temporary total disability compensation beginning 09/22/2006 to todays [sic] date.
 {¶ 13} 8. Relator administratively appealed the DHO's order of April 12, 2007.
 {¶ 14} 9. Following a May 18, 2007 hearing, a staff hearing officer ("SHO") mailed an order on May 23, 2007 that affirmed the DHO's order of April 12, 2007. The SHO's order explains:
 The request for temporary total compensation from 09/22/2006 forward remains denied. As noted by the District Hearing Officer, the injured worker was released to full duty on 12/19/2005, a week after the industrial injury of this claim. The injured worker worked full duty until he was terminated on 09/22/2006. *Page 6 
 Like the District Hearing Officer, the Staff Hearing Officer is not persuaded that the injured worker's inability to work is due to the allowed conditions of the claim but rather due to his termination. As noted by the District Hearing Officer, the injured worker was seen by Dr. Iuvara on 09/08/2006, who recommended continuing treatment at two times per week. The injured worker did not see Dr. Iuvara until 11/01/2006. It is not clear how Dr. Iuvara can opine that the injured worker was disabled as of 09/22/2006 when he did not see him that day.
 {¶ 15} 10. Relator administratively appealed the SHO's order of May 18, 2007.
 {¶ 16} 11. On June 7, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 18, 2007.
 {¶ 17} 12. On June 19, 2007, relator moved the commission to exercise R.C. 4123.52 continuing jurisdiction over the SHO's order of May 18, 2007.
 {¶ 18} 13. In an interlocutory order mailed July 20, 2007, the three-member commission ordered that relator's June 19, 2007 motion be set for hearing to determine whether the alleged mistake of fact is sufficient to invoke continuing jurisdiction.
 {¶ 19} 14. Following an October 16, 2007 hearing, the commission determined that the SHO's order of May 18, 2007 contains a clear mistake of fact sufficient for the exercise of continuing jurisdiction. The commission's order is divided into two parts.
 {¶ 20} All three members joined in the first part of the order, stating:
 * * * After further review and discussion, it is the finding of the Industrial Commission that the Injured Worker has met his burden of proving that the Staff Hearing Officer order, issued 05/23/2007, contains a clear mistake of fact. Specifically, the Staff Hearing Officer based his decision in part on the mistaken finding that the Injured Worker had not seen his physician of record, Joseph Iuvara, D.O., from 09/08/2006 to 11/01/2006, when in fact office records reveal several visits during the period for which temporary total disability compensation was requested. Therefore, the Commission exercises continuing jurisdiction pursuant to R.C. 4123.52
and State ex rel. Nicholls v. Indus. Comm. *Page 7 
(1998), 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320, and State ex rel. Gobich v. Indus. Comm. (2004), 103 Ohio St.3d 585, in order to correct this error. The Injured Worker's request for reconsideration, filed 06/19/2007, is granted and the Staff Hearing Officer order, issued 05/23/2007, is vacated.
 {¶ 21} Two of the three members joined in the second part of the order, stating:
 Notwithstanding the granting of the Injured Worker's request for reconsideration, the C-84 request for temporary total disability compensation, filed 11/15/2006, is denied.
 The Injured Worker is requesting the payment of temporary total disability compensation from 09/22/2006 through 12/18/2006, inclusive. He was released to return to full duty work on 12/19/2006.
 The Injured Worker was fired on 09/22/2006. Despite office visits of 09/11/2006, 09/15/2006, 09/18/2006, 09/21/2006, 09/25/2006, 09/27/2006 and thereafter, the first medical evidence of temporary total disability is a C-84 signed by Dr. Iuvara on 11/14/2006. In absence of contemporaneous medical evidence supporting temporary total disability, the Commission does not find the retroactive C-84 persuasive. Moreover, the Commission notes that the Injured Worker was working full-time unrestricted duty until he was terminated on 09/22/2006. Finally, the medical evidence from Dr. Iuvara provides no explanation why records for treatment around 09/22/2006 do not address the Injured Worker's inability to engage in the full duty employment activities performed up to the date of termination, while the C-84, signed by Dr. Iuvara more than two months later, certifies temporary total disability.
 Therefore, based on the lack of contemporaneous medical documentation of temporary total disability in the office notes of Dr. Iuvara, the lack of persuasive medical proof explaining the certified period of temporary total disability, and the Injured Worker's unrestricted full-time work activity at the time he was terminated, it is the order of the Commission that the payment of temporary total disability compensation from 09/22/2006 through 12/18/2006, inclusive, is denied. *Page 8 
 {¶ 22} 15. Earlier, on July 26, 2007, neurological spine surgeon Ying H. Chen, D.O., completed a C-9 requesting authorization for lumbar surgery. On July 30, 2007, relator's managed care organization approved the C-9.
 {¶ 23} 16. On August 13, 2007, relator moved for TTD compensation beginning July 1, 2007. In support, relator submitted the C-9 and a C-84 from attending chiropractor Joseph Iuvara, D.C., certifying TTD beginning July 1, 2007.
 {¶ 24} 17. Relator's August 13, 2007 motion prompted the bureau to request a file review from Robert A. Blank, D.C. In his report dated August 17, 2007, Dr. Blank concluded: "Medical records do not support the period of disability 07-01-07 to present and to continue as it relates to the allowed conditions and 12-12-05 injury."
 {¶ 25} 18. Following a December 10, 2007 hearing, a DHO issued an order granting relator's August 13, 2007 motion. The DHO's order explains:
 Temporary total disability compensation is granted from 10/22/2007 through today's date and to continue upon submission of medical evidence. The District Hearing Officer finds that the injured worker became temporarily and totally disabled due to the allowed conditions in the claim, on 10/22/2007. Specifically, this is the date he underwent authorized surgery. The District Hearing Officer relies on the C-84s on file to support this finding.
 Temporary total disability compensation is denied prior to this date, because the injured worker failed to meet his burden of proving that he was temporarily and totally disabled due to the allowed conditions. The District Hearing Officer relies on the 08/17/2007 report of Dr. Blank to support this finding.
 Counsel for the employer argued that temporary total disability compensation is not payable because the issue is res judicata. Specifically, counsel argues that there has been a prior finding of voluntary abandonment and the injured worker has not returned to employment since the abandonment. The District Hearing Officer disagrees that the injured worker has been found to have voluntarily *Page 9 
abandoned his employment. Neither the District Hearing Officer order of 04/12/2007, the Staff Hearing Officer order of 05/18/2007 nor the Commission order of 10/16/2007 do a "Louisiana Pacific" [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] analysis of voluntary abandonment. Rather, temporary total disability compensation was denied in those orders for other reasons and not because of a voluntary abandonment.
 {¶ 26} 19. Both relator and Ellis Brothers administratively appealed the DHO's order of December 10, 2007.
 {¶ 27} 20. Following a January 23, 2008 hearing, an SHO issued an order that vacates the DHO's order of December 10, 2007 and denies relator's August 13, 2007 motion. The SHO's order explains:
 The C-86 motion request for payment of temporary total compensation from 07/01/2007 through present (01/23/2008) and to continue is denied. The Staff Hearing Officer finds the claimant's [sic] voluntarily departed from his employment on 09/22/2006 with the employer of record for reasons unrelated to the industrial injury and failed to re-enter the work force prior to this requested period of temporary total disability. The Staff Hearing Officer relies on State ex rel. McCoy v. Dedicated Transport Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, and State ex rel. McGraw v. I.C. (1990), 56 Ohio St.3d 137. The claimant was terminated from the employer of record on 09/22/2006 due to failure to adjust a knob, causing a load of concrete to be ruined. The reasons for the claimant's termination were clearly unrelated to the industrial injury per both parties testimony at hearing. The claimant never re-entered the work-force after his 09/22/2006 termination. The claimant now seeks payment of temporary total compensation from 07/01/2007 or 07/26/2007 (the date Dr. Chen requested a lumbar fusion and fixation surgery per a C-9 dated 07/26/2007). The Staff Hearing Officer denies temporary total compensation from 07/01/2007 through 01/23/2008 (hearing date) as the claimant never re-entered the work force since his 09/22/2006 termination. The Staff Hearing Officer finds the claimants [sic] departure from his employment with the employer of record (for reasons unrelated to the industrial injury) preclude his receipt of temporary total disability compensation; per the McGraw case. The Staff Hearing Officer therefore denies the request *Page 10 
for payment of temporary total compensation from 07/01/2007 through 01/23/2008 (today's date).
 {¶ 28} 21. On March 11, 2008, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 23, 2008.
 {¶ 29} 22. On April 24, 2008, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's March 11, 2008 refusal order.
 {¶ 30} 23. On May 27, 2008, relator, Jerry A. Wilson, filed this mandamus action. Conclusions of Law:
 {¶ 31} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 32} Analysis begins with the observation that the SHO's order of January 23, 2008 cites two cases in support of the determination that relator "voluntarily departed from his employment on 09/22/2006." Significantly, the SHO's order does not cite to State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401.
 {¶ 33} The SHO's order cites to State ex rel. McGraw v. Indus.Comm. (1990), 56 Ohio St.3d 137, a case decided by the Supreme Court of Ohio in 1990. A decade later, the court had occasion to discussMcGraw in State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, the syllabus of which states:
 When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job.
 {¶ 34} In Baker, the court explained McGraw:
 * * * [T]he appellant in McGraw abandoned the work force for reasons unrelated to his original industrial injury, and he was *Page 11 
not working at the time of his subsequent injury, which he claimed was related to his original industrial injury and again rendered him temporarily and totally disabled. McGraw, 56 Ohio St.3d 137, 564 N.E.2d 695. McGraw was originally injured in 1976 during his employment with Kenworth Trucking Company, and he was subsequently awarded workers' compensation benefits for his injury. Thereafter, he quit Kenworth for reasons unrelated to his work injury, and he moved to Pennsylvania. After working in several different positions, McGraw quit his last job in mid-1986, and he did not work thereafter. In March 1987, McGraw filed for continued TTD from Kenworth, which the Industrial Commission denied, based on his voluntary abandonment of his position with Kenworth. For that reason, the court of appeals denied his request for a writ of mandamus, and this court affirmed the court of appeals' judgment.
 The claimant in McGraw not only abandoned the work force, as he was unemployed for approximately eight or nine months before his request for continued TTD, but he requested continued TTD more than ten years after his original industrial injury. McGraw was not working at the time of his injury; thus, he did not incur any loss of earnings at the time that he reaggravated his original industrial injury. McGraw, unlike Baker, abandoned his employment and the work force.
Id. at 382. (Emphases sic.)
 {¶ 35} Within two years of the Baker decision, the Supreme Court of Ohio decided State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305, the syllabus of which states:
 A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 36} In McCoy, at ¶ 36, the court again had occasion to explainMcGraw: *Page 12 
 In Baker, 89 Ohio St.3d at 384, 732 N.E.2d 355, we agreed with Judge Tyack's dissenting opinion in the court of appeals, which recognized that "`[a] complete abandonment of employment can, under certain circumstances, break the chain of cause and effect necessary to demonstrate that an injured worker actually is unemployed because of the injury.'" We also defined the circumstances under which this would occur by distinguishing several cases in which the voluntary abandonment rule was applied to preclude TTD compensation. Thus, we distinguished McGraw, 56 Ohio St.3d 137, 564 N.E.2d 695, where the claimant had quit his former position of employment for reasons unrelated to his industrial injury and years later, after working at and abandoning several other jobs, sought TTD compensation when he reinjured himself. In so doing, we explained, "McGraw was not working at the time of his [subsequent] injury; thus, he did not incur any loss of earnings at the time that he reaggravated his original industrial injury." Baker, 89 Ohio St.3d at 382, 732 N.E.2d 355.
 {¶ 37} As previously noted, the SHO's order of January 23, 2008 does not cite to Louisiana-Pacific, at 403, wherein the court states:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with [State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] and [State ex rel. Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118]-i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 38} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, 561, a case heavily relied upon by relator, the court had occasion to clarify its decision in Louisiana-Pacific:
 Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as *Page 13 
merely illustrative of a TTC-preclusive firing. We favor claimant's position.
 The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.
(Emphasis sic.)
 {¶ 39} Recently, the Supreme Court of Ohio decided State ex rel.Pierron v. Indus. Comm., ___ Ohio St.3d ___, 2008-Ohio-5245, affirming this court's decision at 172 Ohio App.3d 168, 2007-Ohio-3292.
 {¶ 40} Cited by Ellis Brothers as supplemental authority,Pierron is instructive.
 {¶ 41} Richard Pierron was seriously injured in 1973 while working as a telephone lineman for Sprint/United Telephone Company ("Sprint/United"). Thereafter, Sprint/United offered him a light-duty warehouse job consistent with his medical restrictions, and he continued to work in that position for the next 23 years.
 {¶ 42} In 1997, Sprint/United informed Pierron that his light-duty position was being eliminated. Sprint/United did not offer him an alternative position, but gave him the option to retire or be laid off. Pierron chose retirement.
 {¶ 43} In the years that followed, Pierron remained unemployed except for a brief part-time stint as a flower delivery person. In late 2003, he moved for TTD compensation beginning June 2001. The commission denied the motion finding that Pierron had voluntarily abandoned his former position of employment. In its decision, the commission wrote: *Page 14 
 [T]he injured worker voluntarily abandoned the work force when he retired in 1997. Despite the dissent's attempt to characterize the departure from the work force as involuntary, there is no evidence whatsoever that the injured worker sought any viable work during any period of time since he retired. The injured worker's choice to retire was his own. He could have accepted a lay-off and sought other work but he chose otherwise. It is not just the fact of the retirement that makes the abandonment voluntary in this claim, as the passage of time without the injured worker having worked speaks volumes. The key point * * * is that the injured worker's separation and departure from the work force is wholly unrelated to his work injury.
Industrial Commission decision, quoted in Pierron, at ¶ 6.
 {¶ 44} Holding that the commission did not abuse its discretion in denying Pierron TTD compensation, the Pierron court explains:
 We are confronted with this situation in the case before us. The commission found that after Pierron's separation from Sprint/United, his actions-or more accurately inaction-in the months and years that followed evinced an intent to leave the work force. This determination was within the commission's discretion. Abandonment of employment is largely a question "of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts." State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383, 544 N.E.2d 677, quoting State ex rel. Freeman (1980), 64 Ohio St.2d 291, 297, 18 O.O.3d 472, 414 N.E.2d 1044. In this case, the lack of evidence of a search for employment in the years following Pierron's departure from Sprint/United supports the commission's decision.
 We recognize that Pierron did not initiate his departure from Sprint/United. We also recognize, however, that there was no causal relationship between his industrial injury and either his departure from Sprint/United or his voluntary decision to no longer be actively employed. When a departure from the entire work force is not motivated by injury, we presume it to be a lifestyle choice, and as we stated in State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210, 216, 648 N.E.2d 827 workers' compensation benefits were never intended to subsidize lost or diminished earnings attributable to lifestyle decisions. In this case, the injured worker did not *Page 15 
choose to leave his employer in 1997, but once that separation nevertheless occurred, Pierron had a choice: seek other employment or work no further. Pierron chose the latter. He cannot, therefore, credibly allege that his lack of income from 2001 and beyond is due to industrial injury. Accordingly, he is ineligible for temporary total disability compensation.
Id. at ¶ 10-11.
 {¶ 45} Here, the commission did not conduct aLouisiana-Pacific three-prong analysis. The commission and Ellis Brothers concede that Louisiana-Pacific was not invoked in the commission's determination that relator's departure from his employment on September 22, 2006 and his failure to reenter the workforce renders him ineligible for TTD compensation.
 {¶ 46} While relator contends that a Louisiana-Pacific analysis will show that he is eligible for TTD compensation and that the commission abused its discretion in determining otherwise, respondents claim here that relator's failure to reenter the workforce following his September 22, 2006 firing supports the commission's determination that he is ineligible for TTD compensation. Apparently, Ellis Brothers contends that Pierron supports its position.
 {¶ 47} If, under Louisiana-Pacific's three-prong test, it cannot be shown that Ellis Brothers clearly defined the prohibited conduct that led to the firing, that the prohibited conduct had been previously identified as a dischargeable offense, and that it was known or should have been known to the employee, then it must be concluded that the firing caused an involuntary departure from employment — not a voluntary one as the SHO concluded. *Page 16 
 {¶ 48} However, as Pierron makes clear, that the job termination was involuntary does not necessarily end the inquiry if there is evidence that relator abandoned the workforce during the months following his firing.
 {¶ 49} Under Pierron, workforce reentry is not an absolute requirement as is the case where McCoy is applicable. McCoy is clearly not applicable here because relator's September 22, 2006 job departure was not voluntary. Under Pierron, an unsuccessful search for post-firing employment may suffice to maintain TTD eligibility.
 {¶ 50} Here, the SHO abused his discretion by requiring a reentry into the workforce to establish TTD eligibility following an involuntary firing that concededly does not meet the test ofLouisiana-Pacific. The SHO also abused his discretion in finding that relator voluntarily abandoned his employment on the date he was fired.
 {¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of January 23, 2008 and, in a manner consistent with the magistrate's decision, enter a new order that determines relator's motion for TTD compensation. *Page 1